Filed 2/22/22  P. v. Bower CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| THE PEOPLE, | C091426 |
| Plaintiff and Respondent, | (Super. Ct. No. 19F7666) |
| v. | |
| TIMOTHY DAVID BOWER, | |
| Defendant and Appellant. | |

After a jury found defendant Timothy David Bower guilty of committing multiple crimes against his girlfriend, including assault with a deadly weapon and corporal injury to a cohabitant, the trial court sentenced him to an aggregate term of 16 years in state prison.  On appeal, defendant argues his convictions should be reversed, because (1) the trial court contravened his constitutional and statutory rights by admitting evidence of his prior domestic violence convictions and his trial counsel provided ineffective assistance in connection with admission of that evidence; (2) the trial court improperly instructed the jury regarding consideration of a lesser included offense; (3) the prosecution committed misconduct in closing argument by distorting the burden of proof and

1

commenting on defendant's failure to testify; and, (4) cumulative error. Regarding his sentence, defendant argues (5) there were inaccuracies in, and procedural irregularities in the generation of, a probation officer's presentencing report; (6) the trial court failed to exercise its discretion to impose a lesser sentence by dismissing defendant's prior strike on a count-by-count basis; (7) certain enhancements must be stricken due to recent changes in sentencing law; and, (8) the trial court imposed costs without a determination of defendant's ability to pay.

We reject defendant's challenges to his convictions. But we agree with defendant on two of the contentions he raises regarding his sentence. Namely, that the two 1-year prior prison enhancements must be stricken, and that the record suggests the trial court viewed a 16-year sentence as unduly harsh, and was unaware of the scope of its discretionary power at sentencing to dismiss defendant's prior strike conviction on a count-by-count basis. Accordingly, we will affirm the convictions, strike the enhancements imposed pursuant to Penal Code section 667.5, subdivision (b), then vacate the remaining sentence and remand to the trial court for resentencing (which makes it unnecessary to address defendant's other sentencing claims).

FACTUAL AND PROCEDURAL BACKGROUND

The defendant was charged in a second amended information with four felony counts including assault and corporal injury on a cohabitant, and three special allegations alleging that he had previously been convicted of one prior serious felony pursuant to Penal Code sections 667, subdivisions (b)-(j) and 1170.12, and two prior felonies resulting in prison terms pursuant to Penal Code section 667.5, subdivision (b).[1] Jury trial commenced in November of 2019.

---

[1] Further undesignated statutory references are to the Penal Code.

# I

## *In Limine Hearing*

Prior to the start of evidence, the trial court held a hearing outside of the presence of the jurors, regarding in limine motions filed by both the People and defendant. Of significance here, the People sought to introduce in their case in chief, certain prior conduct of defendant pursuant to Evidence Code section 1109, which defendant opposed.

The conduct involved four prior acts of domestic violence occurring in 2012, 2000, and 1998 for willfully inflicting corporal injury on a spouse, cohabitant, or parent of defendant's child (§ 273.5, subd. (a)); and in 1997 for battery against a spouse, cohabitant, or parent of defendant's child (§ 243, subd. (e)).

In a pretrial pleading, the prosecution provided pertinent provisions of Evidence Code section 1109; argued defendant's prior domestic violence convictions "show[ed] a pattern of behavior . . . establishing that violence towards [defendant's] intimate partners [was] the natural consequence of the dynamics of his relationship[s] with them"; and maintained the prior conviction evidence "substantially outweigh[ed] any potential for unfair prejudice."

In his pretrial pleading, defendant argued his prior convictions were "remote and unduly prejudicial"; maintained that evidence of his prior convictions had to be analyzed under Evidence Code section 352; and highlighted the additional "interest of justice" inquiry in Evidence Code section 1109, subdivision (e), for "[e]vidence of acts occurring more than 10 years before the charged offense." At the in limine hearing, defense counsel argued the convictions "exceed[ed] ten years" and were "excessive and/or unduly prejudicial."

In ruling the evidence admissible, the trial court observed that "just because evidence is especially . . . harmful does not mean that it is inadmissible." It also observed that the prosecution was "not offering testimonial evidence," of the defendant's propensity to commit domestic violence, but "the fact of certain convictions only." "So,

3

it seems to me," the trial court continued, "that the People are being restrained here and their tender is proper." "And so," the trial court ruled, the prosecution "would be able to mention" defendant's "domestic violence related convictions in [its] opening statement."

When the prosecutor sought to introduce evidence of defendant's domestic violence convictions after the last witness testified, defense counsel responded: "I have objected." "[T]hese [convictions] are obviously prejudicial." "I think one or two would be sufficient to advise the jury that he has a propensity if that is the goal of these are. After that I think it becomes 352. It's unduly prejudicial." The trial court responded, "I don't intend to re[-]visit the [in limine] rulings."

## II

### Trial Testimony and Evidence

A. *Ana L.*

Ana L. met the defendant in March or April of 2019. By June 27th of 2019 they were living together and were boyfriend and girlfriend. On June 27, 2019, Ana L. and defendant began to argue in a loft area outside of their bedroom. "[I]t escalated" and Ana L. backed up "to get away from" defendant and found herself on the bedroom floor. After ending up on the floor, Ana L. revealed to defendant that she slept with his friend. In response, defendant kicked her, hit her, and threw a video game "cabinet" (made of wood and plastic) at the back of her head, causing immense pain. Ana L. "saw stars," and thought she was going to pass out. Defendant helped Ana L. onto the bed, apologized to her, and told her "it wouldn't happen again." Things were "calm for awhile," until another argument arose a few hours later.

During the subsequent argument, defendant threw several glass candle holders at Ana L. while she was in bed. Then, he picked up a "torch, propane tank" by the bedroom fireplace, and "came at" Ana L., who covered her head with her arms. Defendant struck Ana L. three times, on her right arm and hands, with the propane tank. The blows bent

4

out of shape, a ring that Ana L. was wearing at the time. It felt like "getting hit with a hammer," Ana L. testified.

Ana L. did not call the police. (At trial, when the prosecutor asked why, Ana L. answered, "Because I love him.")

Ana L. had swollen fingers on both hands, and a lump on the back of her head. Pain in her hands, arm, and head lasted for about two months. She began having regular headaches.

During another argument on July 1, 2019, defendant slapped Ana L. on the left side of her face. Ana L. fell, and defendant kicked her three times on the left side of her body, where pain lasted for a couple of weeks. As a result of the attack, Ana L. had a black eye and facial bruising that was visible for at least nine days.

On the morning of July 4, 2019, Ana L. woke up with chest pain, and thought she was having a heart attack. (She had a heart attack about 14 years earlier.) Ana L. told defendant, who called for an ambulance.

At first, Ana L. told no one at the hospital about defendant's attacks, because she didn't want defendant to get into trouble. But Ana L. eventually "broke down and started crying" after a nurse who had been treating her asked her, "who hit you?"

A police officer came to the hospital, interviewed Ana L., and took photos of her injuries. Afraid of defendant, Ana L. asked the officer for an emergency protective order against him.

B. *Nurse Practitioner Banke*

An emergency room nurse practitioner who treated Ana L. on July 4, 2019, testified she had no independent memory of the event, but she documented her treatment of Ana L. in hospital medical records.

According to the nurse's notes, Ana L. reported "her boyfriend had been physically abusive," and Ana L. had injuries consistent with physical abuse: "bruising

5

around her eye" and "chest wall tenderness." Ana L. told the nurse she had been "pushed down" and "struck in her face" on July 1, 2019.

The nurse testified that it "can be common" for emergency room patients to reveal domestic violence as a secondary complaint, after being seen by medical professionals for an initial health complaint.

The nurse's notes did not memorialize any complaints by Ana L. of hand pain, head pain, dizziness, or back pain. Nor did the medical records reflect that the nurse saw any bruises on Ana L., other than on her face.

C. *Officer Brandow*

A police officer who came to the hospital and took photos of Ana L.'s injuries, testified that Ana L. "seemed distraught" and "a little bit scattered" when the officer interviewed her.

In addition to a black eye, Ana L. had bruises on her neck, hand, forearm, and knees. She also had "two large lumps" (each "the size of a fifty cent piece and raised maybe a quarter to half an inch") on the back of her head, and "winced" when the officer touched them. Ana L. showed her injuries to the officer because the officer asked her to.

The lumps on Ana L.'s head were not visible to the naked eye, and Ana L.'s bruises were not as apparent in photos as they were in person, because—in the officer's experience—it is usually "more difficult to see" an injury in a photo, when one cannot view it "from different angles" as one can in person.

D. *Prior Convictions*

After the last prosecution witness testified, and pursuant to the trial court's in limine ruling, the prosecutor introduced, as propensity evidence pursuant to Evidence Code section 1109, certified documents showing defendant's four prior domestic violence convictions.

Defendant presented no evidence at trial.

6

## III

### *Closing Arguments*

In closing argument, the prosecutor reminded the jury that defendant had "four prior domestic violence convictions that go back a number of years. . . . In laymen terms he did it before so he did it again. You get to consider does he have a propensity for committing domestic violence and if so you get to use that as one of the factors to decide did he commit domestic violence in this case."

Defense counsel told the jury Ana L. was "paint[ing] a picture of someone who was in kind of a demonic state," and "struck" at Ana L.'s head, "trying to kill her. Do the facts bare [*sic*] that out? That is the question that you have to answer."

Ana L. "described . . . vicious strikes to her head and . . . hands," defense counsel said. Apparently displaying a photo of Ana L.'s injuries in evidence, defense counsel urged the jurors to "see that there are no injuries corresponding with what she says happened." The police officer who testified to the visible injuries on Ana L.'s body was mistaken, defense counsel suggested. "I think [the officer] looked at it and someone was telling her something is there and [the officer] says okay there is something there." Further, defense counsel maintained, the nurse practitioner's notes were largely inconsistent with Ana L.'s testimony regarding her injuries.

In rebuttal argument the prosecutor used a box as demonstrative evidence. During the argument she reminded the jury of the evidence that had been presented throughout the trial and figuratively placed that evidence inside the box and when she was done stated: "And at the conclusion of the evidence yesterday when the People rested, and the defense elected not to put on evidence the lid went on."

7

IV

*Jury Instructions*

At the conclusion of the evidence and counsels' arguments, the trial court instructed the jury on the applicable law. In part, the trial court instructed the jury with CALCRIM No. 840—Inflicting Injury on Spouse, Cohabitant, or Fellow Parent Resulting in Traumatic Condition, and CALCRIM No. 875—Assault with Deadly Weapon, and Assault with Force Likely to Produce Great Bodily Injury. The trial court also instructed the jury with the lesser crime of simple battery to the domestic violence charges, CALCRIM No. 841, and with the lesser crime of simple assault to the assault charges, CALCRIM No. 915.

While reading the jury instructions regarding the lesser crimes, the trial court made oral comments about the evaluation and consideration of the lesser crimes that were not part of the written instructions. After the jury was sent out to begin deliberations, defense counsel moved for a mistrial based on the prosecutor's reference to the lid closing on the demonstrative box, as well as the trial court's oral comments. The motion was denied.

V

*Verdicts and Special Allegations*

After the close of evidence, but prior to the jury's deliberations, the defendant waived his right to a jury trial on the special allegations.

On November 22, 2019, the jury found defendant guilty on all counts alleged in the operative charging document: assault with a deadly weapon (propane tank) on June 27, 2019 (count I; § 245, subd. (a)(1)); corporal injury to a cohabitant on June 27, 2019 (count II; § 273.5, subd. (a)); assault with force likely to produce great bodily injury on June 27, 2019 (count III; § 245, subd. (a)(4)); and corporal injury to a cohabitant on July 1, 2019 (count IV; § 273.5, subd. (a)).

8

Immediately after the jury verdicts, defendant admitted that he had suffered a 2000 conviction for first degree burglary, which was "a serious felony and a strike felony under [section] 1170.12 [subd. ](b)," the "Three Strikes" law, and for purposes of section 667.5, that he served two distinct prior prison terms for two other crimes.

## VI

### *Sentencing*

In January 2020, after denying defendant's oral motion to dismiss his prior strike under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, the trial court imposed a sentence of 16 years in state prison, consisting of: (a) eight years for the assault with a deadly weapon offense (the upper term of four years, doubled for the prior strike), (b) consecutive two-year terms for each of defendant's three other offenses (one-third the middle term of three years, doubled for the prior strike), and two 1-year terms for defendant's two prior prison terms.

As for costs, the trial court imposed $160 pursuant to section 1465.8, and $120 pursuant to Government Code section 70373, to which defense counsel stated "no objection to the . . . fines and fees" recommended in a probation officer's presentencing report.

Defendant timely appealed.

## DISCUSSION

### I

### *Admission of Prior Convictions as Propensity Evidence*

Defendant argues the trial court contravened his constitutional and statutory rights by admitting evidence of his prior domestic violence convictions. He challenges both the facial validity of Evidence Code section 1109 and the trial court's application of the statute. The People argue the trial court did not err. We agree with the People.

9

Evidence Code section 1109, subdivision (a)(1), provides in relevant part: "Except as provided in subdivision (e) . . . , in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101[2] *if the evidence is not inadmissible pursuant to Section 352*." (Italics added.) Subdivision (e) of the statute provides: "Evidence of acts occurring more than 10 years before the charged offense is *inadmissible* under this section, *unless* the court determines that the admission of this evidence is *in the interest of justice*." (Italics added.)

"Character evidence, sometimes described as evidence of a propensity or disposition to engage in a type of conduct, is generally inadmissible to prove a person's conduct on a specified occasion. [Citations.] . . . [But] [t]he Legislature has . . . created specific exceptions to the rule against admitting character evidence in cases involving sexual offenses ([Evid. Code,] § 1108, subd. (a)), and domestic violence." (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1159 (*Villatoro*).) Evidence Code sections 1108 and 1109 "can properly be read together as complementary portions of the same statutory scheme." (*People v. Brown* (2000) 77 Cal.App.4th 1324, 1333; see *Villatoro*, at p. 1162, fn. 4.)

Acknowledging the "general concern against allowing a jury to consider propensity evidence in a criminal case" highlighted by two members of the court, the *Villatoro* majority opinion nevertheless emphasized that "the Legislature has made the careful determination that evidence the defendant committed one or more sex offenses may be properly considered." (*Villatoro, supra*, 54 Cal.4th at p. 1165.) The majority

---

**2** Evidence Code section 1101, subdivision (a) says: "Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."

opinion also observed that California jury instructions properly explain to juries that a defendant's prior commission of a pertinent offense " 'is not sufficient by itself to prove the defendant is guilty' " of a pending charged offense.  (*Id*. at p. 1165.)

References to Evidence Code section 352 in the statutory scheme permitting propensity evidence in cases involving sexual offenses and domestic violence "merely make[ ] 'explicit' " that the statutory scheme "does not *supersede* section 352 or other provisions of the Evidence Code."  (*Villatoro, supra*, 54 Cal.4th at p. 1163.)

As for conduct that occurred more than 10 years prior to a pending charge, the "same type of analysis" that a trial court engages in when conducting an Evidence Code section 352 inquiry "is appropriate" for the "interest of justice" inquiry mandated by Evidence Code section 1109, subdivision (e).  (*People v. Johnson* (2010) 185 Cal.App.4th 520, 539 (*Johnson*).)  The difference is that, while "[u]nder [Evidence Code section 1109] subdivision (a)(1) and [Evidence Code] section 352, evidence may be excluded only where its probative value is 'substantially outweighed' by its prejudicial effect," "the 'interest of justice' exception is met where the trial court . . . concludes . . . that the evidence [is] 'more probative than prejudicial.' " (*Id*. at pp. 539-540.)

Though "the Supreme Court has not specifically ruled on the constitutionality of [Evidence Code] section 1109," multiple appellate courts have "uniformly . . . [held] section 1109 does not offend due process.  [Citations.]" (*Johnson, supra*, 185 Cal.App.4th at p. 529.)

A challenge on the merits to a trial court's decision to admit propensity evidence pursuant to Evidence Code section 1109 is reviewed for an abuse of discretion. (*Johnson, supra*, 185 Cal.App.4th at p. 531.)

Here, consistent with the *Villatoro* majority's observation regarding California jury instructions on propensity evidence, the trial court told the jury that defendant's prior commission of domestic violence was "only one factor to consider along with all the

other evidence. [¶] It is not sufficient by itself to prove that the defendant is guilty of [c]ounts I through IV."

Recognizing that all California courts that have considered the question have ruled that Evidence Code section 1109 is constitutionally sound, defendant nevertheless urges us to break with those other courts, and find the statute violates due process and equal protection principles. We decline the invitation. (See *People v. Brown* (2011) 192 Cal.App.4th 1222, 1233, fn. 14 ["the admission of evidence pursuant to [Evidence Code] section 1109 . . . does not violate a defendant's rights to due process and equal protection"].)

Citing Justice Liu's concurring and dissenting opinion in *Villatoro*, defendant also contends that, when deciding the admissibility of his prior convictions pursuant to Evidence Code section 1109, "[t]he trial court did not conduct [an Evidence Code] section 352 analysis and such an analysis cannot be inferred from the record."

Defendant argues that Evidence Code section 1109 was unconstitutional as applied in this case, positing that the trial court "fail[ed] to undertake the requisite careful balancing" under Evidence Code section 352, and apply the heightened "interest of justice" standard articulated in Evidence Code section 1109, subdivision (e). He further contends that, on appeal, we cannot find an "implicit" analysis by the trial court, because such a finding "is not consistent" with the case law. We disagree.

Preliminarily, we observe that defendant's reliance on a dissenting opinion in *Villatoro* for support of his position is untenable, as we are bound by the majority decision in *Villatoro*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) And that majority decision *reaffirmed* the proposition that reviewing courts should be " 'willing to infer an implicit [Evidence Code section 352] weighing by the trial court on the basis of record indications *well short* of an express statement.' " (*Villatoro, supra*, 54 Cal.4th at p. 1168.)

The dissenting opinion in *Villatoro* that defendant relies on disagreed with the majority's willingness to infer an implicit weighing by the trial court, arguing the record in *Villatoro* "offer[ed] even less to indicate that the court conducted a[n] [Evidence Code] section 352 analysis," than did the record in *People v. Padilla* (1995) 11 Cal.4th 891, where our Supreme Court stated a willingness to " 'infer an implicit weighing by the trial court on the basis of record indications well short of an express statement.' " (*Villatoro, supra*, 54 Cal.4th at p. 1183 (Liu, J., dis. & conc. opn.).)

"[T]hose indications in *Padilla*," the dissent explained, "included the prosecution's pretrial brief stating 'that an Evidence Code section 352 weighing was required as a condition of admitting the evidence' and defense counsel's oral argument '[taking] the position that what he referred to as the "extreme prejudice" likely to follow on the admission of such evidence should bar its use.' [Citation.] The record in *Padilla*, [our Supreme Court] said, 'signal[ed] that counsel and the trial court had in mind the appropriate analytic framework for passing on the admissibility of the evidence, that the court was therefore aware of the need to weigh the evidence under [Evidence Code] section 352, and thus that it must have done so.' " (*Villatoro, supra*, 54 Cal.4th at p. 1183 (Liu, J., dis. & conc. opn.).)

Here, the record offers at least as much as the record in *Padilla* (as characterized by the dissenting opinion in *Villatoro* that defendant relies on) to indicate that the trial court conducted an Evidence Code section 352 analysis (and concluded the evidence was more probative than prejudicial).

The prosecutor's pretrial pleading referenced Evidence Code section 352 and Evidence Code section 1109, subdivision (e)'s "interest of justice" standard for acts occurring more than 10 years before the charged offense, and argued "the probative value of the [propensity] evidence substantially outweigh[ed] any potential for unfair prejudice." Further, the defense pretrial pleading also referenced the statutory provisions, and in oral argument, defense counsel emphasized that some of defendant's convictions

13

"exceed[ed] ten years, and . . . would be . . . excessive and/or unduly prejudicial." In ruling the evidence admissible, the trial court observed that (a) "just because evidence is especially . . . harmful does not mean that it is inadmissible," and (b) the prosecution was "not offering testimonial evidence," of defendant's propensity to commit domestic violence, but "the fact of certain convictions only."

In support of his contention that Evidence Code section 1109 was unconstitutional as applied in this case, defense counsel also points to the fact that the *first* amended information in this case alleged that defendant had been convicted of a prior violation of section 273.5 within seven years of committing the new violations of section 273.5 in 2019. A defendant who violates section 273.5, subdivision (a) within seven years of a prior conviction for any of the offenses listed in section 273.5, subdivision (f),[3] faces more punishment than a defendant who has no such prior conviction: a sentencing triad of "two, four, or five years," rather than "two, three, or four years." (See § 273.5, subds. (a), (f).) In closing argument, the prosecutor referenced those allegations. But before the case was submitted to the jury, the prosecutor realized that defendant's 2012 conviction was "just outside" the seven-year window vis-à-vis the June-July 2019 incidents at issue here. Accordingly, a *second* amended information—omitting the section 273.5, subdivision (f) allegations—was filed, and the prosecutor explained the mistake to the jury in final argument.

In support of this contention, defendant observes that "no one recognized that . . . the alleged [2012] conviction had not occurred within seven years of the charged

---

[3]     Corporal injury to a spouse or cohabitant (§ 273.5, subd. (a)), battery resulting in serious bodily injury (§ 243, subd. (d)), sexual battery (§ 243.4), assault or battery with corrosive acid with the intent to disfigure (§ 244), assault or battery with a stun gun (§ 244.5), assault with a deadly weapon (§ 245).

offense," and therefore, "there was no need to admit this conviction *for purposes of counts II and IV*," the section 273.5 counts. (Italics added.)

Defendant never explains or analyzes how this factor impacted (one way or another) the trial court's ruling on the admissibility of the evidence. While omission of the section 273.5, subdivision (f) allegation from the second amended information reduced defendant's potential exposure, it in no way undermined the trial court's ruling that defendant's domestic violence convictions were admissible pursuant to Evidence Code section 1109. Those two issues were and are entirely distinct. The pretrial pleadings make clear that the prosecutor sought to introduce *all* of defendant's prior domestic violence convictions (including three convictions that clearly were outside the § 273.5, subd. (f) seven-year window) *as propensity evidence*, not simply for the purpose of enhancing defendant's potential term of incarceration.

Thus, consistent with *Villatoro*, we infer an implicit Evidence Code section 352 weighing by the trial court, which resulted in a determination that evidence of defendant's domestic violence convictions from 1997, 1998, and 2000 was more probative than prejudicial, thereby meeting the "interest of justice" standard articulated in Evidence Code section 1109, subdivision (e).[4] (*Johnson, supra*, 185 Cal.App.4th at pp. 539-540.) Accordingly, this claim is unpersuasive.

Finally, defendant contends his trial counsel provided ineffective assistance by failing to "discover the [2012] prior conviction alleged in counts [II] and [IV] [was] outside the seven-year window" contemplated by section 273.5, subdivision (f). Defendant contends that "evidence of the 2012 conviction" "may not have come in had"

---

[4] Similarly—and to the extent that defendant challenges admission of his 2012 conviction—we infer an implicit weighing and determination by the trial court that the probative value of evidence of defendant's 2012 domestic violence conviction was not substantially outweighed by its prejudicial effect.

the first amended information "been properly analyzed by defense counsel." We reject this claim, because even if we were to find deficient performance by trial counsel, defendant has not demonstrated prejudice.

" 'To establish a violation of the constitutional right to effective assistance of counsel, a defendant must show both that his counsel's performance was deficient when measured against the standard of a reasonably competent attorney and that this deficient performance caused prejudice in the sense that it "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." [Citations.] If a defendant has failed to show that the challenged actions of counsel were prejudicial, a reviewing court may reject the claim on that ground without determining whether counsel's performance was deficient. [Citation.]' " (*People v. Sapp* (2003) 31 Cal.4th 240, 263.)

Here, assuming for the sake of argument that trial counsel's performance was deficient, defendant has failed to show prejudice. As explained above, that the 2012 conviction ultimately was not germane to an element of any count in the operative charging document in no way suggests the 2012 conviction would not have been presented to the jury via the entirely separate avenue of propensity evidence.

Accordingly, this claim is unpersuasive.

II

*Jury Instructions*

Defendant argues the trial court improperly "require[d] the jury to first decide whether the charged offense[s] had occurred" before considering the lesser included offense of battery. The People argue the trial court's oral instructions "may have arguably run afoul" of the case law, but any error was harmless. We find no reversible error.

16

The trial court instructed the jury that "[a] lesser included offense to the[ ] domestic violence charges in [c]ounts II and IV is called battery against a cohabitant in violation of . . .[s]ection 243[, subdivision ](e)(1)." The trial court continued: "[T]he thing you have to remember about the lesser crime of battery against a cohabitant . . . is that you don't reach an evaluation of whether the defendant is guilty or not guilty of that offense unless you are to find or were to find the defendant not guilty of the greater charge. [¶] So you don't -- if you don't reach the lesser charge and there is no reason to do that unless you find that the defendant is not guilty of the greater charge. [¶] Should you find the defendant guilty of the greater charge, you don't come to or consider the lesser charge. And the verdict form will guide you in that respect."

Later, the trial court also told the jury that "[s]imple assault" was "[a] lesser included as to" the "assaultive crimes" in the operative charging document, saying: "[A]nd again you don't come to this, you wouldn't come to this simple assault as a lesser included to either of the assaultive crimes unless you were to find the defendant not guilty as to that greater offense."

Defendant contends, and the People appear to agree, that the trial court's comments detailed above were "not part of the instructions that had been submitted" by the parties for the trial court's consideration. The record indeed reflects that these comments were not in the written jury instructions.

Later still, the trial court told the jury that the "next instruction" it was going to provide, "tells you what I have already told you about lesser included offenses." The trial court then instructed the jury with language from CALCRIM No. 3518, including: "It is up to you to decide the order in which you consider each crime and the relevant evidence but I can accept a verdict of guilty of a lesser crime only if you have found the defendant not guilty of the corresponding greater crime."

The trial court also told the jury to "[p]ay careful attention to all of the[ ] instructions and *consider them together*." (Italics added.)

17

Consistent with its promise at the beginning of trial (to give to the jury "a copy of the written instructions to have" to "refer back to them as necessary") and just before giving final instructions, the trial court told the jury, "I will give you a copy of the instructions to use in the jury room."

"[A] court may restrict a jury from returning a verdict on a lesser included offense before acquitting on a greater offense, but may not preclude it from considering lesser offenses during deliberations. (*People v. Berryman* [(1993)] 6 Cal.4th [1048,] 1073; *People v. Kurtzman* (1988) 46 Cal.3d 322, 324-325.) Thus, a trial court should not tell the jury it must first unanimously acquit the defendant of the greater offense before deliberating on or even considering a lesser offense. (*People v. Kurtzman, supra*, 46 Cal.3d at pp. 328, 335.)" (*People v. Dennis* (1998) 17 Cal.4th 468, 536 (*Dennis*).)

" 'No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.) Our high court has not provided definitive guidance on the standard of review applicable when deciding whether a trial court has misdirected a jury, but it appears we are to review instructional error arguments de novo. And if the challenged instruction is ambiguous, we are to independently review whether there is a 'reasonable likelihood that the jury construed or applied the challenged instructions in a manner' contrary to law. [Citations.]" (*People v. Olivas* (2016) 248 Cal.App.4th 758, 772 (*Olivas*).)

Relevant to that "reasonable likelihood" test in cases of ambiguous instructions, our Supreme Court has stated the general rule that to the "extent a discrepancy exists between the written and oral versions of jury instructions, the written instructions provided to the jury will control." (*People v. Wilson* (2008) 44 Cal.4th 758, 803 (*Wilson*).)

"*Kurtzman* involved an appeal from a second degree murder conviction. ([*People v.*] *Kurtzman, supra*, 46 Cal.3d at pp. 327-328.) During deliberations, the jury asked the trial court: ' "Can we find the defendant guilty of manslaughter without unanimously finding him not guilty of murder in the second degree?" ' (*Id.* at p. 328.) The trial court responded: ' "No, you must unanimously agree on the second degree murder offense before *considering* voluntary manslaughter.' " (*Ibid.*, italics in *Kurtzman*.) . . . [T]he *Kurtzman* court said: 'It is clear . . . that the trial court erred in instructing the jury not to "deliberate on" or "consider" voluntary manslaughter unless and until it had unanimously agreed on second degree murder.' (*Kurtzman*, at p. 335.)" (*Olivas, supra*, 248 Cal.App.4th at pp. 773-774.)

Whereas the trial court in *Kurtzman* made a clear incorrect statement of law forbidding the jury from even considering a lesser offense until first reaching a verdict on the greater offense, the trial court's oral instructions to the jury here were ambiguous.

The trial court told the jury: (1) "there is no reason to" "reach the lesser charge" "unless you find that the defendant is not guilty of the greater charge"; (2) "[s]hould you find the defendant guilty of the greater charge, you don't come to or consider the lesser charge. And the verdict form will guide you in that respect"; (3) "you wouldn't come to this simple assault as a lesser included to either of the assaultive crimes unless you were to find the defendant not guilty as to that greater offense." Consistent with the written instructions, the trial court instructed the jury: (4) "[i]t is up to you to decide the order in which you consider each crime and the relevant evidence but I can accept a verdict of guilty of a lesser crime only if you have found the defendant not guilty of the corresponding greater crime"; and (5) "consider" all of the instructions "together."

Although the trial court's oral statements as reflected in Nos. 1 and 3 above could be construed consistent with defendant's contention, the trial court's statement reflected in No. 2 was a legally correct conditional statement, and instruction No. 4 was a legally correct instruction about the jury's control over the order of deliberations. Lastly,

19

instruction No. 5 told the jury to consider all the instructions *together*. Accordingly, we conclude the trial court's oral instructions, taken as a whole, were ambiguous on this issue that defendant raises.

Finally, instruction No. 4 was provided to the jury in written form ("to use in the jury room," in the trial court's words), and the trial court's oral statements were not. Under *Wilson*, instruction No. 4 (the written instruction) "control[s]" "[t]o the extent a discrepancy exists between the written and oral versions of jury instructions." (*Wilson, supra*, 44 Cal.4th at p. 803.) Accordingly, we conclude no reasonable likelihood exists defendant's jury construed the challenged instructions in a manner contrary to the rule of *Kurtzman*. (Cf. *Dennis, supra*, 17 Cal.4th at p. 537 [rejecting an argument of *Kurtzman* error, because "a reasonable juror would have understood the [challenged] instruction, *which the court told the jury to consider . . . with the other instructions as a whole*, as governing how to return the verdicts and findings after completing deliberations," where "[o]ther instructions implicitly told the jury that its deliberations should include consideration of the lesser offenses" (italics added)].)[5]

Accordingly, this claim is unpersuasive.

---

[5]     Defendant quotes *Francis v. Franklin* (1985) 471 U.S. 307, 322, for the proposition that " 'a reviewing court has no way of knowing which of the two irreconcilable instructions the jury applied in reaching a verdict,' " and contends that language leads to the conclusion that the trial court's provision of CALCRIM No. 3518 to the jury here "d[id] not cure the incorrect instructions that were given." We are not persuaded.

As explained above, the trial court's instructions here were ambiguous, not "irreconcilable." Further, this is an issue of state law, not federal law, and we must follow our Supreme Court's decisions in *Wilson* and *Dennis*. (See *Auto Equity Sales, Inc. v. Superior Court, supra*, 57 Cal.2d at p. 455; cf. *People v. Breverman* (1998) 19 Cal.4th 142, 169-175 [ruling that instructional error on a lesser included offense is a question of state, not federal law].)

## III

### *Prosecution Argument to the Jury*

Defendant contends the prosecutor committed prejudicial misconduct during argument to the jury by distorting the burden of proof and commenting on defendant's failure to testify. We disagree.

During closing arguments, defense counsel told the jury that prosecutors "don't get to say what the evidence is. You decide. What [the prosecutor] says, what I say, it's not evidence. The evidence is what was testified to and the documents and the photographs that were entered."

Defense counsel: "I submit to you that [Ana L.] blatantly lied that she was struck with" the propane tank. "[W]hy would she say those things? She knew that the place was going to be sold. She is sleeping with this new guy, I don't know who he is or what part he played, but is she leaving [defendant] to go to this new guy and wants him out of the picture. I don't know. These are things that came up, you can consider them and give them the weight you want."

The prosecutor responded in final argument: "If [Ana L.] [was] just making this up to try to get [defendant] in trouble and get him out of her house why didn't she call [the police] on June 27th. Why didn't she call on July first?" Ana L. was in the hospital on July 4th "because she thought she was having a heart attack," and she "didn't even want to" reveal the domestic violence, but did so spontaneously "when the nurse" asked who hit her.

The prosecutor continued: "This isn't a woman who came in here because she wants to get [defendant] in trouble. You saw her. Her demeanor. She was afraid. She did not want any of this."

The prosecutor then apparently utilized the visual aid of a box, and told the jury: "[T]his box . . . represents the trial, in the beginning it was empty. But now it is no longer empty." Inside the box, the prosecutor explained, was: (i) testimony of Ana L.,

21

the nurse practitioner, and the police officer; (ii) photos "of the crime scene and of the weapon," and Ana L.'s injuries; (iii) defendant's 2012 conviction "showing his propensity to commit domestic violence," and the "rap sheet showing all four of [defendant's] prior domestic violence convictions," "[s]howing that he has a propensity to commit domestic violence."

"And at the conclusion of the evidence yesterday when the People rested and the defense elected not to put on evidence the lid went on," the prosecutor said. "Evidence was closed and the lid went on the box. Thus everything inside this box is your body of evidence that you get to utilize in deciding whether or not the defendant is guilty of all four counts. When the defense says well I don't know maybe she made this up because of this. *That is outside the box. His theory on why she might have lied, that is not evidence in this case for you to consider. You have to ignore that commentary.* You decide based on what you have. Everything inside this box proves beyond a reasonable doubt that the defendant is guilty on all four counts." (Italics added.)

The trial court instructed the jury that "[e]vidence is the sworn testimony of witnesses, the exhibits admitted . . . and anything else I told you to consider as evidence. Nothing that the attorneys say is evidence. In their opening statements and closing arguments the attorneys discussed the case but their remarks are not evidence." The trial court also instructed the jury that "[t]he defendant in a criminal case has an absolute [c]onstitutional right not to testify. He . . . may rely on the state of the evidence and argue that the People have failed to prove the charges beyond a reasonable doubt. Do not consider for any reason at all the fact that the defendant did not testify."

" 'Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error.' [Citation.] ' "We must indulge in every presumption to uphold a judgment, and it is defendant's burden on appeal to affirmatively demonstrate error—it will not be presumed." ' " (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 549.)

22

A prosecutor has "latitude . . . in commenting upon deficiencies in opposing counsel's tactics." (*People v. Redd* (2010) 48 Cal.4th 691, 736.)

" 'Although counsel have "broad discretion in discussing the legal and factual merits of a case [citation], it is improper to misstate the law. [Citation.]" ' [Citations.] In particular, it is misconduct for counsel to attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements." (*People v. Katzenberger* (2009) 178 Cal.App.4th 1260, 1266.) Accordingly, "use of an easily recognizable iconic image along with the suggestion of a quantitative measure of reasonable doubt" may "convey an impression of a lesser standard of proof than the constitutionally required standard of proof beyond a reasonable doubt," resulting in prosecutorial misconduct. (*Id.* at p. 1268.)

" '[T]he Fifth Amendment . . . forbids . . . comment by the prosecution on the accused's silence . . . .' (*Griffin v. California* (1965) 380 U.S. 609, 615.) The prosecutor's argument cannot refer to the absence of evidence that only the defendant's testimony could provide. [Citation.] The rule, however, does not extend to comments on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses." (*People v. Brady* (2010) 50 Cal.4th 547, 565-566 (*Brady*).)

We presume a jury follows the trial court's instructions. (*People v. Edwards* (2013) 57 Cal.4th 658, 723.)

The prosecutor's use of the visual aid of a box whose "lid went on" when "the defense elected not to put on evidence," and whose contents were the totality of evidence for the jury to consider, was fair comment on the state of the evidence; not comment on defendant's silence. While defense counsel's proffer as to why Ana L. lied on the witness stand was an argument as to her credibility, not evidence, and the prosecutor's rebuttal argument that defense counsel's theories were "outside the box," and "not evidence," were also fair comments. What the argument did not do was convey an impression of a lesser standard of proof than beyond a reasonable doubt.

23

In *People v. Katzenberger*, "[t]he prosecutor . . . showed jurors six pieces of an eight-piece puzzle representing the Statue of Liberty, urging the jurors that they ' "know [what] this picture is beyond a reasonable doubt without looking at all the pieces of that picture. We know that that's a picture of the Statue of Liberty, we don't need all the pieces of . . . it." ' ([*People v. Katzenberger, supra,*178 Cal.App.4th] at p. 1265.) [A panel of this court] found that the prosecutor had misrepresented the reasonable doubt standard, explaining that '[t]he presentation, with the prosecutor's accompanying argument, leaves the distinct impression that the reasonable doubt standard may be met by a few pieces of evidence. It invites the jury to guess or jump to a conclusion, a process completely at odds with the jury's serious task of assessing whether the prosecution has submitted proof beyond a reasonable doubt.' (*Id*. at p. 1267.) Additionally, the 'prosecutor's puzzle analogy' contained a 'quantitative component,' in that it suggested that six of eight pieces (that is, 75 percent of the pieces) were enough to overcome the reasonable doubt standard. (*Id*. at pp. 1267-1268.)" (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 843.)

Here, by contrast, the prosecutor's box analogy "did *not* invite the jury 'to guess or jump to a conclusion.' (*People v. Katzenberger, supra*, 178 Cal.App.4th at p. 1267; cf. [*People v.*] *Centeno* [(2014)] 60 Cal.4th [659,] 669 [criticizing '[t]he use of an iconic image like the shape of California or the Statue of Liberty,' which 'necessarily draw on the jurors' own knowledge' and 'trivialize the deliberative process, essentially turning it into a game that encourages the jurors to guess or jump to a conclusion'].)" (*People v. Daveggio and Michaud, supra*, 4 Cal.5th at p. 843, italics added.) And the box analogy in no way suggested a quantification of the reasonable doubt standard. The box analogy was comment on the state of the evidence. (*Brady, supra*, 50 Cal.4th at pp. 565-566.)

Similarly, the prosecutor's comments to the jury that defense counsel's argument was "outside the box," "not evidence," and therefore something the jury "ha[d] to ignore," was a comment on "deficiencies in opposing counsel's tactic[ ]" (*People v.*

24

*Redd, supra*, 48 Cal.4th at p. 736) of theorizing—without producing supporting evidence—that Ana L. lied.

Accordingly, the prosecutor did not distort the burden of proof.

Nor did the prosecutor clearly comment on defendant's silence when telling the jury that the "lid went on" when "the defense elected not to put on evidence."

Defense counsel argued "Ana L. blatantly lied" about defendant's conduct, and invited the jury to consider the possibility Ana L. lied *because* she was "sleeping with this new guy," defendant's friend. "I don't know who he is or what part he played," defense counsel continued, "but is [Ana L.] leaving [defendant] to go to this new guy and wants [defendant] out of the picture. I don't know. These are things that came up, you can consider them and give them the weight you want."

Defense counsel asked Ana L. on cross-examination if she told defendant that she slept with his friend in order to hurt defendant. (She denied it.) But defense counsel did *not* ask Ana L. if at any point around the time of the incidents at issue, she was planning to leave defendant and start dating defendant's friend. Nor does the record reflect any effort by the defense to call defendant's friend to the stand to pose questions to him about the nature of his relationship with Ana L. around the time of the incidents.

It appears the prosecutor was commenting on those voids in the record, which the defense might have filled *without defendant's testimony*. (See *Brady, supra*, 50 Cal.4th at pp. 565-566 [the rule against prosecutorial comment on the accused's silence "does not extend to comments on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses"]; cf. *People v. Hughes* (2002) 27 Cal.4th 287, 372-373 & fn. 19 [rejecting a claim of *Griffin* error where the prosecutor's statements—including, " 'I would ask you to . . . base your verdict on the law and on the facts, evidence that you can handle, *evidence of somebody from the witness stand*, not accept [defense counsel's] invitation and base your verdict on what

could have happened but which we have no evidence of'"—were "nothing more than proper fair comment on the state of the evidence"].)

## IV

### *No Cumulative Error*

Defendant argues that "even if none of th[e] errors were individually prejudicial, the cumulative prejudicial effect requires reversal." "We need not consider [this] allegation . . . . We have found no error at all, and therefore there are no errors to accumulate." (*People v. Moore* (2016) 6 Cal.App.5th 73, 99.)

## V

### *Sentencing*

Defendant raises two issues regarding his sentence that we believe have merit.

Defendant contends the two 1-year prior prison term enhancements imposed pursuant to section 667.5, subdivision (b), must be stricken under the amendment provided in Senate Bill No. 136 (2019-2020 Reg. Sess.). The People agree and so do we.

On October 8, 2019, Senate Bill No. 136 was signed into law and became effective on January 1, 2020. The legislation modifies section 667.5, subdivision (b), to eliminate one-year sentences for prior prison terms served unless the prior prison term involves a conviction of a sexually violent offense (which is not at issue here). The statute is retroactive and applies to cases not yet final as of its effective date. (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 303, 308; *In re Estrada* (1965) 63 Cal.2d 740.) Accordingly, we strike the sentence imposed for the section 667.5, subdivision (b) enhancements.

Defendant next contends the trial court—despite indicating a belief that an aggregate 16-year sentence was unduly harsh—failed to exercise its discretion to impose a lesser sentence by dismissing defendant's prior strike as to particular counts, thereby avoiding the doubling of some or all of the subordinate terms of his sentence.

26

The People acknowledge that "[i]n *People v. Garcia* (1999) 20 Cal.4th 490 (*Garcia*), our Supreme Court held that a trial court sentencing a defendant under the Three Strikes law has discretion to dismiss strike allegations on a count-by-count basis."[6] But the People insist that defendant "has forfeited [t]his challenge to the court's failure to exercise its discretionary power" by failing to request such relief in the trial court. Further, the People contend, in the absence of anything in the record "affirmatively demonstrating the trial court was unaware of its discretion as outlined in *Garcia*," we "cannot presume error."

Defendant responds that his claim is *not* forfeited, because his oral *Romero* motion "encompassed a request to dismiss [the prior strike] on a count-by-count basis"; that we have discretion to address an otherwise forfeited claim if justice requires; and lastly that any forfeiture is excused, and therefore we *must* address this claim, due to ineffective assistance of counsel at sentencing.

It appears that the trial court was unaware of its discretion under *Garcia* thus we will reverse the sentence and remand for resentencing.

At the sentencing hearing, defense counsel asked the trial court to "consider striking" defendant's prior strike offense. The prosecution opposed the defense's oral *Romero* motion, and the trial court denied it, explaining: "I am not going to strike a prior violent strike in the case of a current violent."

As for the term of incarceration, defense counsel asked the trial court to impose "the mid-term," "not impose the maximum sentence in th[e] case." The prosecution requested "the upper-term," because "[t]his [was] a very severe and significant case."

The trial court noted the "numerous" aggravating factors in the case, "including . . . that [defendant] has been convicted of domestic violence felonies in the past. He has

---

**6** See *People v. Laanui* (2021) 59 Cal.App.5th 803, 815, footnote 12 ("*Garcia* held that courts . . . may strike prior conviction allegations on a count-by-count basis").

27

served prison terms, he has a prior strike, and there don't appear to be any mitigating factors." "There are some atmospherics though that apply here," the trial court observed. "[T]he existence of the prior strike not only doubles the term, it doubles the consecutive terms. Consecutive terms are mandatory in this situation, and so *the strike winds up having an outsized effect on the overall situation*. [¶] *So I am going to keep that in mind in going through this*." (Italics added.)

After pronouncing discrete terms for counts I and II, the trial court explained that it was "going to stay . . . th[e] term" for count III "pending successful completion of parole." The prosecutor asked if that was pursuant to section 654.[7] When the trial court said "No," the prosecutor argued that the trial court had no other authority upon which to stay the term for count III. "All right. I am going to need to think about this a little further," the trial court said.

The trial court repeated its earlier observation of the "outsized" role the strike played in sentencing, adding: "It keeps on and on and on." Addressing the prosecutor, the trial court said: "[Y]ou may be right that there is no . . . discretion anywhere here past the selection of a term and it's difficult for a sentencing court to factor . . . the outsized effect of this strike . . . . But the equitable problem here is that this man is getting a sentence greater than second degree murder."

Upon returning from a brief recess to consider "if there [was] any wiggle room at all" for sentencing, the trial court again observed that "the presence of the strike prior is outsized it's having an outsized effect it's doubled many times." But "the sentencing rules d[idn']t permit any other treatment in this case."

---

[7] Which provides, in pertinent part: "An act . . . that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act . . . be punished under more than one provision." (§ 654, subd. (a).)

On the merits, "all presumptions are indulged to support the trial court order or judgment 'on matters as to which the record is silent, and error must be affirmatively shown.' [Citation.] The presumption of correctness and the allocation of the burden to the appellant is part of the constitutional doctrine of reversible error. [Citations.]" (*Smith v. Ogbuehi* (2019) 38 Cal.App.5th 453, 473.)

But here, the record is *not* "silent" regarding the trial court's awareness of its discretion to dismiss defendant's strike on a count-by-count basis under *Garcia*. The trial court repeatedly characterized the prior strike's role in sentencing as "outsized," and initially tried to stay a subordinate consecutive term of imprisonment. The trial court also expressed its unease with (a) the "equitable problem" it saw due to the effect of the strike going "on and on and on," and (b) the absence of "discretion anywhere . . . past the selection of a term."

We therefore do not presume the trial court was aware of its discretion under *Garcia*. (See *People v. Ochoa* (2020) 53 Cal.App.5th 841, 852-853 [rejecting the People's argument to presume the trial court exercised sentencing discretion where the record was "not silent," but "ambiguous" "at best"].) And "[w]hile we do not fault the trial court for this misunderstanding—neither the People nor defense counsel suggested otherwise—' "[d]efendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that 'informed discretion' than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record." ' " (*Id.* at p. 853.)

Even if we were to find that defendant forfeited this issue on appeal,[8] we would exercise our discretion to address it in the interest of justice.[9] (*People v. Cota* (2020) 45 Cal.App.5th 786, 794 ["We exercise our discretion to consider [defendant's] claim on the merits, notwithstanding any possible forfeiture. (See *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 [reviewing courts have discretion to excuse forfeiture])"].)

Accordingly, after striking the sentence imposed for the section 667.5, subdivision (b) enhancements, we will vacate the remaining sentence, and remand for a full resentencing hearing. (*People v. Shaw* (2020) 56 Cal.App.5th 582, 588-589 ["when an error affects part of a sentence, the case must be remanded for a full resentencing hearing as to all counts to permit a trial court to exercise its sentencing discretion in light of the changed circumstances"].)

Thus, the court need not address defendant's remaining challenges to specific aspects of his sentence or the process by which his sentence was determined. On remand,

---

[8] "In making sentencing choices, the trial judge is confronted with a maze of statutes and rules, the intricacy of which rival the Internal Revenue Code. By reason of this complexity and the ever-changing guidelines, sentencing error is not uncommon. In an effort to avoid error, it is therefore reasonable to place the obligation to formulate *specific* objections squarely on defense counsel, and not on the judge." (*People v. De Soto* (1997) 54 Cal.App.4th 1, 9, italics added.) Thus, "claims of error in the trial court's exercise of its sentencing discretion are . . . forfeited if not raised at the sentencing hearing." (*People v. Trujillo* (2015) 60 Cal.4th 850, 856.)

[9] Accordingly, we need not decide (a) whether defendant's trial counsel preserved this issue for appellate review by asking the trial court (broadly) to "consider striking" defendant's prior strike offense, or (b) whether—if trial counsel did not preserve the issue—he thereby rendered ineffective assistance. (Cf. *People v. Speight* (2014) 227 Cal.App.4th 1229, 1248-1249 [finding deficient performance where counsel did not raise an argument during a sentencing hearing, and quoting *People v. Scott* (1994) 9 Cal.4th 331, 351, for the proposition that a defense attorney who fails to adequately understand the available sentencing alternatives and pursue the most advantageous disposition for his client may be found incompetent].)

defendant may raise his objections concerning any perceived inability to pay fines and fees at the new hearing.  (See *People v. Buycks* (2018) 5 Cal.5th 857, 893.)

## DISPOSITION

Defendant's convictions are affirmed.  The sentence imposed for the section 667.5, subdivision (b) enhancements is stricken, and the remaining sentence is vacated. The matter is remanded to the trial court for resentencing.

/s/

EARL, J.

We concur:

/s/

HULL, Acting P. J.

/s/

ROBIE, J.